# In re Ariadna Angelica Gonzalez RECINAS, et al., Respondent

## File A75 696 573 - Los Angeles

### *Decided September 19, 2002*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The respondent, a single mother who has no immediate family remaining in Mexico, provides the sole support for her six children, and has limited financial resources, established eligibility for cancellation of removal under section 240A(b) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b) (2002), because she demonstrated that her United States citizen children, who are 12, 11, 8, and 5 years old, will suffer exceptional and extremely unusual hardship upon her removal to her native country.

(2)  The factors considered in assessing the hardship to the respondent's children include the heavy burden imposed on the respondent to provide the sole financial and familial support for her six children if she is deported to Mexico, the lack of any family in her native country, the children's unfamiliarity with the Spanish language, and the unavailability of an alternative means of immigrating to this country.

FOR RESPONDENTS: German T. Flores, Esquire, Orem, Utah

BEFORE:  Board En Banc:  SCIALABBA, Chairman; DUNNE, Vice Chairman; SCHMIDT, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, GUENDELSBERGER, ROSENBERG, GRANT, MOSCATO, MILLER, BRENNAN, ESPENOZA, OSUNA, OHLSON, HESS, and PAULEY, Board Members.

VILLAGELIU, Board Member:

The respondents have appealed from the decision of an Immigration Judge dated December 18, 2000, denying their application for cancellation of removal pursuant to section 240A(b) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b) (2000).  The appeal will be sustained.

## I.  FACTUAL BACKGROUND

The adult respondent is a 39-year-old native and citizen of Mexico.  She is the mother of four United States citizen children, aged 12, 11, 8, and 5, and the two minor respondents, aged 15 and 16, both of whom are natives and citizens of Mexico.  Her parents are lawful permanent residents and her five siblings are United States citizens.  She is divorced and has no immediate family in Mexico.

The three respondents entered the United States in 1988 on nonimmigrant visas and stayed longer than authorized. Except for a brief absence in 1992, they have remained in this country since their initial entry.

## II.  ISSUE

The sole issue on appeal is whether the Immigration Judge erred in finding that the respondent failed to demonstrate that her removal would result in exceptional and extremely unusual hardship to her four United States citizen children and/or her lawful permanent resident parents.[1]  *See* section 240A(b) of the Act.

## III.  ANALYSIS

Congress created the relief of cancellation of removal under section 240A(b)(1) of the Act as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546.  Cancellation of removal is available to an alien who has been physically present in the United States for at least 10 years, has been a person of good moral character, has not been convicted of a specified criminal offense, and has established that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a United States citizen or lawful permanent resident.  This case requires us to interpret the "exceptional and extremely unusual hardship" standard.

### A.  Exceptional and Extremely Unusual Hardship Standard

In *Matter of Monreal*, 23 I&N Dec. 56 (BIA 2001), we first considered the "exceptional and extremely unusual" hardship standard in a precedent decision in the case of a 34-year-old Mexican national who was the father of three United States citizen children.  We held that to establish exceptional and extremely unusual hardship under section 240A(b) of the Act, an alien must demonstrate that his or her spouse, parent, or child would suffer hardship that is substantially beyond that which would ordinarily be expected to result from the person's departure.  We specifically stated, however, that the alien need not show that such hardship would be "unconscionable."  *Id.* at 60.  We also noted that, in deciding a cancellation of removal claim, consideration should be given to the age, health, and circumstances of the qualifying family members, including how a lower standard of living or adverse country conditions in the country of return might affect those relatives.  *Id.* at 63.

---

[1]  As the Immigration Judge noted, the minor respondents do not have a qualifying relative for purposes of cancellation of removal.  *See* section 240A(b)(1)(D) of the Act.

After reviewing the case, we dismissed the respondent's appeal, finding that he had not satisfied the new hardship standard. We noted that the respondent had been working for 10 years at his uncle's business, but had a brother living in Mexico who also worked for the same business. Our decision emphasized that the respondent was in good health and would be able to work and support his United States citizen children in Mexico. We further found that, upon his return to Mexico, the respondent would be reunited with family members, including his wife (the mother of their three children), who had already returned to Mexico with one of the children. *Id.* at 64. Finally, we noted that the respondent's children were in good health and that the eldest, who was 12 years old, could speak, read, and write Spanish. *Id.*

We revisited the issue in *Matter of Andazola*, 23 I&N Dec. 319 (BIA 2002), finding that the exceptional and extremely unusual hardship standard was not met in the case of a single Mexican woman. The respondent had two United States citizen children, who were 11 and 6 years old. Their father (who apparently had authorization to remain in the United States) contributed financially to the family, was a presence in the lives of the children, and could continue to help support the family upon their return to Mexico. All of the respondent's siblings were living in the United States, but were without documentation. The respondent had not shown that her United States citizen children would be deprived of all schooling, or of an opportunity to obtain any education. In denying relief, we considered it "significant" that the respondent had accumulated assets, including $7,000 in savings and a retirement fund, and owned a home and two vehicles. *Id.* at 324. We noted that these assets could help ease the family's transition to Mexico. Accordingly, we found that the case presented a common fact pattern that was insufficient to satisfy the exceptional and extremely unusual hardship standard. *Id.*

While any hardship case ultimately succeeds or fails on its own merits and on the particular facts presented, *Matter of Andazola* and *Matter of Monreal* are the starting points for any analysis of exceptional and extremely unusual hardship. Cancellation of removal cases coming before the Immigration Judges and the Board must therefore be examined under the standards set forth in those cases.

## B. Hardship Factors

In the present case, the adult respondent is a single mother of six children, four of whom are United States citizens. The respondent and her children have no close relatives remaining in Mexico. Her entire family lives in the United States, including her lawful permanent resident parents and five United States citizen siblings. As in *Matter of Andazola*, the respondent's mother

serves as her children's caretaker and watches the children while the respondent manages her own motor vehicle inspection business.

The respondent is divorced from the father of her United States citizen children. Although the respondent's former husband at one point was paying $146.50 per month in child support, there is no indication that he remains actively involved in their lives. He is currently out of status and was in immigration proceedings in Denver as of the date of the respondent's last hearing.

The respondent has been operating her own business performing vehicle inspections for 2 years. The business has two employees. She reported having $4,600 in assets, which is apparently the value of an automobile she owns. The respondent testified that after 2 months in business her proceeds were $10,000 a month, but she was also repaying her mother and brother money that she and her former husband had borrowed from them. After meeting expenses, her net profits were $400-500 per month.

The respondent's four United States citizen children have all spent their entire lives in this country and have never traveled to Mexico. She and her family live 5 minutes away from her mother, with whom they have a close relationship. According to the respondent, her children, particularly two of her United States citizen children, experience difficulty speaking Spanish and do not read or write in that language.

Finally, the respondent has no alternative means of immigrating to the United States in the foreseeable future. There is a significant backlog of visa availability to Mexican nationals with preference classification. Therefore, the respondent has little hope of immigrating through her United States citizen siblings, or even her parents, should they naturalize.

## C. Assessment of Hardship

While this case presents a close question, we find it distinguishable from both *Matter of Monreal*, *supra*, and *Matter of Andazola*, *supra*. As we noted in those decisions, the exceptional and extremely unusual hardship standard for cancellation of removal applicants constitutes a high threshold that is in keeping with Congress' intent to substantially narrow the class of aliens who would qualify for relief. *Matter of Andazola*, *supra*, at 324; *Matter of Monreal*, *supra*, at 59-60. Nevertheless, the hardship standard is not so restrictive that only a handful of applicants, such as those who have a qualifying relative with a serious medical condition, will qualify for relief. We consider this case to be on the outer limit of the narrow spectrum of cases in which the exceptional and extremely unusual hardship standard will be met. Keeping in mind that this hardship standard must be assessed solely with regard to the qualifying relatives in this case, we find the following factors to be significant.

The respondent has raised her family in the United States since 1988, and her four United States citizen children know no other way of life. The respondent's children do not speak Spanish well, and they are unable to read or write in that language.

Unlike the children in *Monreal* and *Andazola*, the respondent's four United States citizen children are entirely dependent on their single mother for support. The respondent is divorced from the children's father, and there is no indication that he remains involved in their lives in any manner. This increases the hardship the children would face upon return to Mexico, as they would be completely dependent on their mother's ability, not only to find adequate employment and housing, but also to provide for their emotional needs.

The respondent has been able to leave her children in the care of her lawful permanent resident mother while she attended courses to obtain a vehicle inspector's certificate and established a business. This assistance from her mother has enabled her to support her children within a stable environment. The respondent's ability to provide for the needs of her family will be severely hampered by the fact that she does not have any family in Mexico who can help care for her six children. As a single mother, the respondent will no doubt experience difficulties in finding work, especially employment that will allow her to continue to provide a safe and supportive home for her children.

From the perspective of the United States citizen children, it is clear that significant hardship will result from the loss of the economic stake that their mother has gained in this country, coupled with the difficulty she will have in establishing any comparable economic stability in Mexico. We emphasize that the respondent is a single parent who is solely responsible for the care of six children and who has no family to return to in Mexico. These are critical factors that distinguish her case from many other cancellation of removal claims.

In addition to the hardship of the United States citizen children, factors that relate only to the respondent may also be considered to the extent that they affect the potential level of hardship to her qualifying relatives. *Matter of Monreal*, *supra*, at 63. In *Andazola* we found that similar factors were not sufficient to meet the high standard of exceptional and extremely unusual hardship. However, in this case, there are additional factors that we find raise the level of hardship, by a close margin, to that required to establish eligibility for relief.

The respondent's lawful permanent resident parents also are qualifying relatives. While we have not considered their hardship in assessing the respondent's claim, her parents form part of the strong system of family support that the respondent and the minor qualifying relatives would lose if they are removed from the United States.

Although the minor respondents lack a qualifying relative for purposes of cancellation of removal, their existence also cannot be ignored. In a family such as this, headed by a single parent, the hardship of their parent inherently translates into hardship on the rest of the family, in this case to all six children. In considering the hardship that the United States citizen children would face in Mexico, we must also consider the totality of the burden on the entire family that would result when a single mother must support a family of this size. *See generally Gutierrez-Centeno v. INS*, 99 F.3d 1529 (9th Cir. 1996). Unlike the situation in *Monreal* and *Andazola*, all of the respondent's family, including her siblings, reside *lawfully* in the United States. We find this significant because they are unlikely to be subject to immigration enforcement and will probably remain in the United States indefinitely. The respondent's family members are very close and have been instrumental in helping her raise her children and obtain the necessary funds to establish her business. The loss of this support would further increase the hardship that she, and therefore her United States citizen children, would suffer if they are compelled to return to Mexico, where no support structure exists.

Finally, we note that the respondent's prospects for lawful immigration through her United States citizen siblings or lawful permanent resident parents are unrealistic due to the backlog of visa availability for Mexican nationals with preference classification. There are no other apparent methods of adjustment available to any of the respondents. These are factors we have previously found to be significant when considering an identical hardship standard for suspension of deportation. *See Matter of B-*, 6 I&N Dec. 713 (BIA; A.G. 1955); *Matter of W-*, 5 I&N Dec. 586 (BIA 1953); *Matter of M-*, 5 I&N Dec. 448 (BIA 1953); *Matter of U-*, 5 I&N Dec. 413 (BIA 1953).

The hardship factors present in this case are more different in degree than in kind from those present in *Monreal* and *Andazola*. For this reason, we see no need to depart from the analysis set forth in those cases. Part of that analysis requires the assessment of hardship factors in their totality, often termed a "cumulative" analysis. Here, the heavy financial and familial burden on the adult respondent, the lack of support from the children's father, the United States citizen children's unfamiliarity with the Spanish language, the lawful residence in this country of all of the respondent's immediate family, and the concomitant lack of family in Mexico combine to render the hardship in this case well beyond that which is normally experienced in most cases of removal. The level of hardship presented here is higher than that established in either *Monreal* or *Andazola* and, in our view, is sufficient to be considered exceptional and extremely unusual.

We emphasize, in conclusion, that this decision cannot be read in isolation from *Monreal* and *Andazola.* Those cases remain our seminal interpretations of the meaning of "exceptional and extremely unusual hardship" in section

240A(b)(1)(D) of the Act.  The cumulative factors present in this case are indeed unusual and will not typically be found in most other cases, where respondents have smaller families and relatives who reside in both the United States and their country of origin.

## IV.  CONCLUSION

Given the unusual facts presented in this case, we find that the adult respondent has shown that her United States citizen children will suffer exceptional and extremely unusual hardship if she is removed from the United States.  Accordingly, her appeal will be sustained and she will be granted cancellation of removal.

As the adult respondent has been granted relief and appears to have no impediment to adjusting her status, the minor respondents are likely to soon have a qualifying relative for purposes of establishing eligibility for cancellation of removal.  Given this fact, we find it appropriate to remand their records to the Immigration Judge for their cases to be held in abeyance pending a disposition regarding the adult respondent's status.

**ORDER:**  The appeal of the adult respondent is sustained.

**FURTHER ORDER:**  The decision of the Immigration Judge is vacated, and the adult respondent is granted cancellation of removal.

**FURTHER ORDER:**  The records of proceedings for the minor respondents are hereby returned to the Immigration Court for further proceedings consistent with the foregoing decision.