NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0055n.06

Case No. 25-3130

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 27, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| GABRIEL ALVARADO, | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW OF |
| | ) | A FINAL ORDER FROM THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| PAMELA BONDI, Attorney General, | ) | |
| Respondent. | ) | OPINION |
| | ) | |

Before: GILMAN, GRIFFIN, and MURPHY, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge**. An immigration judge (IJ) denied Gabriel Alvarado's application for cancellation of removal, but granted his request for voluntary departure. The IJ found that Alvarado had failed to meet the statutory standard of "exceptional and extremely unusual hardship" to his United States children—a showing necessary to warrant cancellation of removal under 8 U.S.C. § 1229b(b)(1)(D).

Alvarado appealed the IJ's decision to the Board of Immigration Appeals (BIA). The BIA dismissed the appeal. For the reasons set forth below, we conclude that the IJ and the BIA committed no error. We therefore DENY the petition for review.

**I. BACKGROUND**

Alvarado is a citizen of Mexico who unlawfully entered the United States in 2000. He has four children, all of whom are United States citizens. His oldest child, Lorena, has Down syndrome and several other serious medical conditions, including diabetes and a condition that causes

seizures. When the IJ issued his decision in December 2019, Lorena was 24 years old. Alvarado's three other children were then 19, 15, and 2 years old.

At the hearing, which was held the same day that the IJ issued his oral decision, Alvarado testified that his children would join him if he were removed to Mexico. This testimony, however, was contrary to Alvarado's statement in his application for cancellation of removal that they would not accompany him.

Alvarado also presented documentary and testimonial evidence in support of his contention that his children would suffer financial, educational, emotional, and medical hardship if he is removed to Mexico. The IJ ultimately determined that Lorena is not a qualifying child under the Immigration and Nationality Act (INA) because she was over the age of 20, and that the alleged hardship to Alvarado's three qualifying children did not rise to the level of being exceptional and extremely unusual. Alvarado timely appealed to the BIA, which agreed with the IJ. This timely petition for review followed.

## II. ANALYSIS

### A. Standard of review

Where, as here, the BIA "adopts the decision of the IJ in lieu of issuing its own opinion, we review the IJ's decision as the final agency decision." *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003). Our review of the agency's decision to deny an application for cancellation of removal is limited to "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). Whether the "established facts satisfy the statutory . . . standard" of exceptional-and-extremely-unusual hardship to a qualifying relative is "subject to judicial review" because it is "a mixed question of law and fact." *Wilkinson v. Garland*, 601 U.S. 209, 212, 225 (2024). By contrast, we lack jurisdiction to review "[t]he facts underlying" the agency's decision, such as "an IJ's factfinding

on credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides." *Id.* at 225.

Our review of the IJ's application of the hardship standard is "deferential." *See id.* Although we have not yet decided exactly what level of deference we should give to the BIA's conclusions on this issue, we need not resolve that question here because, under any level of deference, Alvarado cannot establish that his qualifying children will suffer exceptional-and-extremely-unusual hardship. *See Moctezuma-Reyes v. Garland*, 124 F.4th 416, 423 (6th Cir. 2024) ("No matter the precise level of deference, the Immigration Judge and the BIA correctly found that [petitioner] 'failed to establish the required exceptional and extremely unusual hardship' to his family." (quoting *Singh v. Rosen*, 984 F.3d 1142, 1154 (6th Cir. 2021) (cleaned up)).

## B.  The IJ did not err in applying the exceptional-and-extremely-unusual-hardship standard

Under § 1229b(b)(1)(A)–(D) of the INA, noncitizens subject to removal proceedings are eligible for cancellation of removal if they can demonstrate that they (1) have been "physically present in the United States for at least 10 years," (2) have "been a person of good moral character," (3) have "not been convicted of a specified criminal offense," and (4) have "established that removal would result in exceptional and extremely unusual hardship" to their "spouse, parent, or child, who is a United States citizen or lawful permanent resident." *In re Gonzalez Recinas*, 23 I. & N. Dec. 467, 468 (B.I.A. 2002).  A "child" is defined as "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1).

Alvarado first argues that the IJ erred in finding that his daughter Lorena was not a qualifying child for the purposes of cancellation of removal.  In determining whether the statutory requirements are met, an IJ must consider the child's age at the time that the IJ issues his or her decision. *Perez v. Bondi*, 160 F.4th 710, 712 (6th Cir. 2025).  The IJ here issued his decision in

December 2019, when Lorena was 24 years old and thus not a qualifying child. But Alvarado argues that the IJ should have considered Lorena's age at the time of his application for cancellation of removal, which he alleges was filed in either May or June 2015 when Lorena was only 19 years old. Based on this contention, Alvarado argues that the IJ's "undue delay" was the cause of Lorena losing her qualifying-child status.

There are, however, three major problems with Alvarado's argument. The first is that his date-of-filing contention is based on a June 5, 2015 "Appointment Notice" that he received from the U.S. Citizenship and Immigration Services relating to an "APPLICATION TO REGISTER PERMANENT RESIDENCE OR ADJUST STATUS," which are forms of relief totally different from cancellation of removal. This isolated Appointment Notice is clearly insufficient to establish that Alvarado filed an application for cancellation of removal in 2015, it was not considered by the IJ, and this document remains immaterial to our decision. *See id.* Second, the actual application date reflected in the record is August 2017, by which time Lorena was already 22 years old and had thus "aged out." This latter date was noted by the IJ at the December 2019 hearing without any objection by Alvarado, which further diminishes the force of his argument. Finally, Alvarado conceded in his brief to the BIA that Lorena is not a qualifying child for the purposes of cancellation of removal. We therefore find no error in the IJ's conclusion that Lorena is not a qualifying child.

Alvarado next challenges the IJ's analysis of the hardship that his removal would allegedly cause to his three qualifying children. To establish exceptional-and-extremely-unusual hardship, an applicant for cancellation of removal must provide evidence of harm "that's significantly different from or greater than the hardship that a deported alien's family normally experiences." *Moctezuma-Reyes*, 124 F.4th at 422.

Alvarado argues that the IJ erred when the IJ "speculated" that Alvarado was unlikely to bring his family with him to Mexico if he were removed. He contends that the IJ "improperly substituted the IJ's own assumptions for Petitioner's sworn decision and undermined the fairness of the hardship analysis." But the IJ explicitly stated that he would "analyze the hardship *both* if the family goes to Mexico as respondent says today, or if the family stays in the United States as respondent had said in the application before it was changed today." (emphasis added) And because the IJ clearly bifurcated his analysis of the potential hardship under both scenarios, the IJ did not "introduce[] unnecessary ambiguity into the hardship analysis" as Alvarado contends.

Next, Alvarado argues that the IJ failed to analyze the alleged potential hardship to his three qualifying children under the appropriate standard, which requires a cumulative analysis. *See Recinas*, 23 I. & N. Dec. at 472 (noting that a cumulative analysis "requires the assessment of hardship factors in their totality"). He argues that the IJ did not adequately consider that Alvarado "has a combination of dire economic reasons combined with the impossible choice of either separating his family and leaving them in poverty or cutting-off medical insurance and benefits for his disabled and seriously-ill daughter and enduring the emotional hardships that would result for his whole family."

To the contrary, the record reflects that the IJ described the relevant legal standard and considered the evidence of hardship that Alvarado presented. The IJ noted that, under *Recinas*, *id.*, "relevant factors . . . may and must be considered in the aggregate." He then assessed the "lesser educational opportunity, lesser financial opportunity," and the potential impact that Lorena's health conditions might have on the qualifying children if Alvarado's family accompanied him to Mexico. The IJ also considered the financial impact and the impact of "separation of the family" on the qualifying children if Alvarado's family stayed in the United

States.  Taken together, the IJ concluded that the "concerns frankly are neither exceptional nor extremely unusual" whether Alvarado's family accompanied him to Mexico or stayed in the United States.  Because the IJ considered the evidence that Alvarado presented and assessed the alleged hardship cumulatively, we find no basis to disturb that determination.

Alvarado further faults the IJ for failing to adequately assess "the loss of U.S.-based medical care and services for . . . Lorena . . . and the effect this would have" on Alvarado's three other children if they moved to Mexico.  But the IJ specifically considered Alvarado's claim that "the children would watch their sister deteriorate and in some sense perhaps die" if they accompanied him to Mexico, and the IJ found that this assertion was not supported by any evidence in the record.  In particular, the IJ noted Alvarado's concession that he had not explored possible healthcare options and government assistance in Mexico.  The record thus contains no evidence of what would happen to Lorena's health and the effect of Lorena's health on the qualifying children if they moved.  Because we lack jurisdiction to review the IJ's factual findings about what the evidence shows, we decline to disturb the ruling on this basis.  *See Singh v. Rosen*, 984 F.3d 1142, 1155 (6th Cir. 2021) (noting that the court lacks jurisdiction to review the IJ's factual findings about what the evidence shows); *see also Wilkinson v. Garland*, 601 U.S. 209, 219 (2024) ("[Q]uestions of fact underlying denials of discretionary relief are unreviewable.").

Alvarado raises several additional challenges to the IJ's specific factual findings.  He contends that the IJ erred in finding that, if Alvarado were removed, Alvarado's wife and/or his 19-year-old daughter could find work, that his children could stay in the United States, and that Lorena's government benefits might help to support the family.  But we lack jurisdiction to review these factual findings.  *See Wilkinson*, 601 U.S. at 219.  We therefore decline to disturb them.

## III. CONCLUSION

For all of the reasons set forth above, we DENY Alvarado's petition for review.